Good morning again, Your Honor. May I please record the facts. My name is Ji Xianli and I represent the petitioner. The facts of this case are not in dispute. Petitioner was threatened with an arrest when he intervened with birth control officials who came to his family house to remove furnishings when petitioner's brother failed to report for sterilization as required. The subjects of the sterilization were the brother and the sister-in-law, not your client. That's correct, Your Honor. Petitioner's intervention, in my opinion, constitutes a form of resistance to the coercive population control program. Well, he was trying to stop what was going on with the house, not stop the forced sterilization. That's correct, Your Honor. But the BIA in its own word acknowledged petitioner's action to be interfering with the population control officials' performance of their duties. But the BIA failed to specify what duties were those officials performing and what the officials were doing by removing the furnishings from his family house was precisely enforcing the birth control policies in China. Did he live in that house at the time? I believe so, Your Honor. That's his family's house. Well, family means different things in different cultures. I mean, I referred to my family's house as really my grandparent's house in Pennsylvania. I mean, we don't know whether he lived in the house. But I don't think that it's going to make a difference one way or the other. But in any event, what respondent interfered with was the enforcement of birth control officials, the enforcement of birth control policies in China. Therefore, the only logical conclusion that the court can draw is that he resisted the enforcement of the birth control policies in China. Therefore, he resisted the coercive population control policies in China. As a result, petitioner falls squarely under the statutory protection. I guess the IJ says that the respondent testified that his brother, his wife, and two daughters lived in the same home with the entire family, that they claimed they shared meals. So, that seems to say he was living there. That's correct. Again, I think my point was... Do you think it makes a difference? No, Your Honor. Even if it's, for example, the officials were removing furnishings from his neighbor's house, and he came forward and intervened. And what he did was interfering with the officials' performance of their duties, meaning the enforcement, namely the enforcement of the birth control policy. So, therefore, by his action, he resisted. But how does that fit within the statutory language? The statute clearly indicates that a petitioner qualifies as a refugee if there's a category of other resistance to a coercive population control. I may quote from my brief. In section 101, small a, 42, big B, it is provided that a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure, or for other resistance to a coercive population control program. So, my argument to the court is that a petitioner's action constitutes other resistance to a coercive population control program. The other problem that I have with the BIS decision leading to the instant petition is that the petitioner's due process rights were violated. It came as a total surprise to the petitioner that the BIA would find questionable whether or not his claim is on a protected ground. The IGA denied the petitioner's application for asylum based upon adverse credibility finding and nothing more. And sure enough, the petitioner appealed to the BIA just focusing on the IGA's analysis relating to his adverse credibility finding. And the BIA then ruled in his favor. That's correct, Your Honor. The BIA ruled in his favor, but nevertheless, the BIA denied his application for the reason that he did not submit enough sufficient cooperating evidence to show that the brother was being targeted for visectomy. Well, but then they retreated on that, too. That's correct. Actually, the government itself asked for remand to the BIA to reconsider its decision in light of the case law in this circuit. Right, exactly so. And they said, and so we're going to do that. Yeah, that's right, Your Honor. And then they denied the petitioner's asylum on a totally unrelated basis. So therefore, the petitioner was not put on notice to defend his case. Did you make a notice to reopen or to attack this, sir? No, Your Honor. I figured probably it would be futile to... Have you exhausted your due process claim then? I mean, you're not telling us that this was a due process problem, and it seems to me you could have filed a motion to reopen and said, we have been denied due process because you sprung this on us out of nowhere. I think the due process issue can be raised for the first time with this court. Could it have been raised there also? I mean, they were willing once to respond to the government's request for a redetermination of the issue. And I'm just wondering why you couldn't have filed a motion to reopen at that level. And if you haven't, is that a failure to exhaust? It's not a loaded question. No, Your Honor, because the jurisprudence in this circuit clearly says that the petitioner can raise for the first time due process violation with this court. And that's what we followed in this incident petition. So in conclusion, Your Honor, it's the petitioner's position that he established that his action falls under a protected ground. And secondly, that this case must be remanded for the BIA to give petitioner an opportunity to present his case. So therefore, if the panel does not have further questions, I will reserve the remainder of my time for rebuttal. All right. Thank you, counsel. May it please the court. My name is Lou Bracco, and I'm an assistant U.S. attorney here in Honolulu. And this is my first foray into immigration law. Normally I do criminal cases, but some of these briefs were farmed out to our office, and I happened to have this one, and I didn't want to pass up the opportunity to appear before this court and do the argument. So first of all, I'd like to address a question that the court has. My recollection of the record is that Liebman Lynn said that he did live in the house. He and his parents and I think one other sibling lived in either the front or the back of the house, and then his brother-in-law and his wife and their one or two children lived in the other part of the house. I forget who lived in the front and who lived in the back. But I think the record is clear that Liebman Lynn did live in the house. I think another thing about this case, unless I'm completely misreading the law, is that this is a little different from the other cases that were before the court this morning. Because here's the case where the BIA said, okay, we're going to accept everything that the asylum applicant says in the testimony before the immigration judge as true, and we say even accepting it as true, we find that he doesn't qualify as a refugee under the statute because he, well, for a number of reasons, but principally because there's no other resistance. They basically conclude that he hasn't met his burden and it's his burden to show that he qualifies as a refugee and he has to show persecution. So they say that he hasn't demonstrated other resistance that this is a single act. This was a single act. A single act. You call it with no follow-up. Right. And it's clear that a little bit of the testimony that I didn't cite in my brief that I was kind of reading last night, but at page 104, when the applicant testified before the immigration judge and the population control people are on the premises. 104? 104. So I just went to reason with them and said these are properties of the whole family? And the point that the testimony that I'd like to get at is that he's basically saying he's protecting his parents and his own property and he's saying it's his brother's property. He says, hey, take it. Just wait for him to come back and take it. So he's really, that little snippet of testimony shows me that he's really protecting a property interest and he's not expressing some political view on the population control policies of the government. He's saying, hey, my brother's property, you take it. But this is my family's property. You can't take this. But then when they persist, I guess, in taking some of the property that he persists, that he believes is his family property, that's when the altercation takes place. Yeah, but then what happened after the confrontation? Well, they came away and they hit me. You cannot get involved. And so then they came by to arrest him. What happened after you were hit? Well, the officer came over to arrest me. Did they? No, I was not arrested. Why not?  He said he slipped out of the back of the house when he found out that they were going to call for the police to come and arrest him. But the government's position is that he was, they called for the police because he was resisting the lawful duties of the population control people, not because he was expressing a political opinion. In other words, if the police here in the U.S. were clearing an area for some purpose and they said, hey, buddy, move your car, and the guy says, I'm not going to move my car and he gets in an altercation, that's not a political opinion. It looks like he took off so that they couldn't arrest him. He stayed at his friend's house for three to five hours, half an hour, and then where did you go to live? I hid out everywhere. I went to places where there were no people. Are you saying you hid outside or indoors? Outdoors. Hide in places there was nobody. How long and how long then did it take you to prepare to leave China? Two to three days. So maybe I misread this, but it sounds to me like he got into a dust-up over the population control, the enforcement of population control procedures. They hit him. Then they sent somebody by to arrest him and he took off and two to three days later he was out of there. Well, I think you have, the sequence of events are right, but I think what you're reading into that is he took off because of something to do with the population control procedures. Yeah, they were trying to arrest him. Well, they were trying to arrest him, but it's not at all clear and we submit there's nothing in the record that shows they were trying to arrest him for something to do with his political opinion as to population control. They were arresting... Okay, so what we're doing here, what we did in Ding is sort of try to define force as what it means in the statute. What we're doing here is trying to define the word resistance as it appears in the statute. So he may have, in this case, he may have started out just trying to protect certain portions of the property and reason with them, but because he was asking them not to, he was interfering with their duties, then they hit him, then they threatened to arrest him, then they started looking at him forcing him to hide out. So the question really is, that I'm wrestling with, is at what point did just trying to protect your family's property turn into, in the eyes of the persecutor, because typically we look at the eyes from the eyes of the persecutor, into resistance to the family population policy of China to the point where those people were planning to, we'll go hit him and then we're going to arrest him and we know, you know, we can only imagine what that means. Well, as I read the record, it appears that once the altercation broke out, he called, the population control people called for the security forces to come and the security forces either had been called or were in route and then he basically takes off. So there's nothing in the record as I see it to say for sure whether he would have been arrested. Well, the security people were there, now they're calling the proper security to arrest me. Right, they were coming to arrest him but the question is what would they have arrested him for? For interfering with the population control authorities. And is that, if he interferes with the population control authorities in a way that isn't, has nothing to do with his political opinion but is because their job is to Yeah, but they confiscate houses that's part and parcel of the process and he's trying to stop the implementation of that part of the process. He was only trying to, in my view, Your Honor, he was trying to protect a property interest. He's basically just trying to say, look, It's like a mixed motive, sure he is, but he's trying to protect it from the policy that he's No, Your Honor, that's coming down on his whole family. No, I don't think so because he's saying in the record, he says, take my brother's property, take it, but don't take my parents' property. So he's not protecting But the response to that is it's very obvious from the narrative here and we've seen this in other areas that the population control authorities are somewhat indiscriminate in terms of the property they will take and you can see why in a coercive regime, they may very well wish to take the property of the parents because the son may in fact be more protective of his parents' property even than his own and so I can see that it would be perhaps coercive but not idiotic for the population control people to take the parents' property and he says, well, take my brother's property but he's just trying to minimize the harm but he's clearly resisting what they're trying to do to enforce. The other thing is that you keep talking about his political opinion that's not in the statute. The statute says other resistance to the family control program and so we don't I mean, I think our what we have to look at is whether he was resisting for whatever reason he's resisting the activities of the family control people. Well, he was certainly resisting taking the property. Part of the enforcement procedure over there on occasion is for a deterrent value is when some member of a family does something wrong the entire family gets it and that sort of causes families to make sure that nobody inside the family does anything wrong or we're all going to get clobbered and this is part and parcel of the whole family goes down when somebody acts up and violates the Well, I understand that from the country profiles but it seems to me that this single act cannot rise to the level of other resistance just by spontaneous it's almost like a spontaneous event like don't do this because then once he goes away I mean So he should have allowed himself to get arrested? Well let me ask you this if I can Let's assume for the moment that he is resisting within the meaning of the statute when he tries to obstruct them from taking the property What is the level of persecution is to say the infliction of harm or threatened harm on him that's necessary for him to say the claim that say you know we're accustomed to all kinds of claims in which people are imprisoned for five months we see all the time in our seat cases from India where you know they're beaten in the police station and various bad things he was hit the word hit is used several times at one point the word beat is used but it doesn't appear that he was hit very badly because he's being asked do you go back to start cooking again and he doesn't say no I was writhing in pain I couldn't he says no I didn't start cooking again because the people were going to come to arrest me so I ran away so I'm trying to figure out does this level of physical harm to him in the moment and the threat of what might happen to him in the future is that enough to be a persecution I would say that I would agree from the record that it appears that he was slapped a couple of times and that's what the hit use the word hit it doesn't say slap well okay but it doesn't appear that he was harmed permanently in any way or that it was like a beating in a kind of a persistent beating it was basically when they were taking the furniture  trying to interfere with their taking the furniture he was struck so that he would move out of the way basically is the way I think I'd say that if it happened and they arrested the guy and they kicked him out the next day or something like that and then five months later he left the country with nothing intervening we'd probably say well that wasn't persecution it was a nasty event but it wasn't persecution the problem here is you know you we don't know what would have happened to the guy if they arrested him because he got out of there rather than being arrested but from what happens in the future first of all it's not his wife that's or him that's being sought to have the vasectomy and ultimately what happens is yeah but the whole family thing is a different deal in China they don't really make those distinctions the way we do but does he have a our position is that he doesn't have a legitimate fear of future persecution because he doesn't need to under the statute are you aware of any cases that discuss or any legislative history or anything that discuss what congress meant by resistance in this statute other resistance does it have to be like an organized program of resistance or a rally I mean what are they talking about when they're talking about the only cases I'm aware of the ones I cited in the brief and I didn't go into that here but basically it has to be on account of his political which in this case the birth control policy so I'm not no it's pretty clear language though for other resistance to a coercive population control program here he's resisting the population control program well again your honor I wouldn't say he's resisting the population control program I think he's resisting a specific visit where they're trying to you know take the furniture and it's not part there's no systematic pattern there's no nothing directed at him the conduct is he just was home by happenstance it's not like he had planned to you're right it was enough to get arrested well it was enough so that security forces were summoned to arrest him yes that's what he says to arrest him he concludes that they would have arrested him I don't know that that's part of the record well if the incident is over isn't it a fair inference that they're coming to arrest him not to break up the incident anymore well they were called because as I understand it he was interfering with taking of the property so at the point where the security forces had come I'm assuming if the property had been removed at that point it's not clear from the record whether they would have arrested him or not they may have said don't do this again or they would have maybe been satisfied that the turn to the family was taking the property that's solely his speculation that he would have been arrested my question is resistance does it have to be political resistance or in general resistance or actual resistance at the time the policy is being carried out it's just being in plain language it's any resistance I'm just trying to figure out if there's anything we can look at to shed some more light on the contours unfortunately I'm not aware of the case that would help you thank you counsel I think you had like you had a couple minutes rebuttal the panel has a further question I do actually assuming that this is resistance within the meaning of the statute why does what happened to him rise the level of persecution because the statute requires persecution for resistance to family planning policies and if that's the concern the panel has then the case should be remanded again to the BIE and to again allow petitioner to have an opportunity to present evidence to show that what happened to him or what would happen to him rise to the level of persecution I see so you're saying that because the BIE decided that this was not on the account of a protected ground  reach the question of whether this was persecution and if we say it was resistance and the question of persecution we need to ask the BIE yes according to the bench order all right thank you counsel Lynn vs. Gonzalez is submitted we previously submitted Casino vs. Gonzalez and that will end the session of the court for today thank you all right this court for this session stands adjourned now the law clerks are going to stay here and answer any questions you might have for about a half an hour and maybe 20 minutes to a half an hour the judges will then return to the courtroom and will be able to answer any questions you have then thank you I will   at the courtroom thank you so please feel free to stay I'll be back soon thank
judges: Trott, Wardlaw W. Fletcher